Good morning, your honors. May it please the court, counsel. I'm Christopher Bugbee on behalf of the appellant and the defendant below, Mr. Franklin. I would like to try to focus my discussion today on the issue of the district court's denial of Mr. Franklin's motion to suppress the evidence that was obtained as a result of the search of the hotel room that was occupied by Mr. Franklin and Mr. Johnson. And what I'd particularly like to focus on is the distinction between location and residence that I've discussed in the briefing. I would note, obviously, our position is that this hotel room, while it may have been occupied by Mr. Franklin, the circumstances and information that was available to CCO Hernandez did not amount to the level where there could be a probable cause determination. He was more than occupied, wasn't he? He was the registered tenant. He was registered. I don't know that I would go so far, your honor, as to agree that he was a registered tenant. Well, all right. You characterize it. He was the only person registered for that room. Yes, he apparently is the individual who signed the hotel slip. Yes, that is true. But I would submit that that is not enough to allow the conclusion that that's his residence. Did he have any other residence at the time? Mr. Franklin, as the record is replete to show, is chronically homeless. So does he have a permanent residence that has been identified? The answer is no, he did not. But to the degree that he was known to be a homeless person, there's a lot of different places that CCO Hernandez and the district court should have understood would most naturally be Mr. Hernandez. And one issue that I'm not sure has been particularly decided is what exactly the term residence means. I don't understand why this matters. And the reason I don't understand why it matters is that the Supreme Court in Knights held that the police may enter the residence of a parolee without a search warrant, without probable cause, if they have reason to believe that the parolee has violated terms of his parole. A parolee is a person who has already been convicted of a crime and sentenced to prison. He's released from prison on parole. He just does not have the privacy rights of a civilian, even though he's outside and living somewhat like one. Understood. And we've applied that before. I think we applied it in our en banc in Motley V. Parks. We had a big go-round on it, as I recall. The parolee just doesn't have the civilian's right to his privacy from search. So I don't actually understand why I should care what his status with respect to the room is. Well, the line of cases that come out of this court have held, I think, fairly regularly, that despite the fact that Mr. Franklin may be a parolee or he may be on community custody, as far as the State of Washington is concerned, there still is a requirement, even where there's clearly a probation violation, and there's been no dispute from Mr. Franklin that he had violated his terms of community custody. Clearly, just the simple fact that he was not reporting as directed by Mr. Hernandez was a violation, so that's not in dispute. But the standard there is, does the CCO... The residence thing seems backward to me. I'm not sure I... Here's what I mean. You're suggesting that you need to establish firmer indicia of residence in the room before you can search it. Yes. And I'm thinking, no, that's backward because the idea is you can't search his mother's house if you have no reason to think that he's there. That would abridge the mother's rights to her privacy. But as for his rights to privacy where he sleeps, he just doesn't have them. Well, I don't know that I would agree and go so far as to say he doesn't have any rights. Once you think he's in violation of parole, he doesn't. Yes, he is in violation of parole, no question. What condition are you referring to? Well, I think as far as the violation, I think the most obvious one is the fact that he was not reporting to Mr. Hernandez as he was directed to do. His contract clearly required him to follow the directions of Mr. Hernandez. He wasn't doing that. And he was required to report his residence or change of residence. Yes, correct. And he did not. He did not. I will note also that during that meeting that he did have with Mr. Hernandez, I believe that occurred on January the 4th, Mr. Hernandez recognizing that Mr. Franklin was chronically homeless required that he report where he would be staying each night. He failed to do that, no question. But, you know, and we would argue and ask you to note the difference in that request. He's recognizing that Mr. Franklin may not have a permanent residence, so he's required orally during that meeting that he simply report his whereabouts. And there was a reason for that, to supervise him on his release. Yes, absolutely, no question. But still, I think the line of cases are still clear, and I understand your Honor's reference to the hypothetical where a parolee may be suspected to be staying at his mother's house, but there may not be probable cause. I understand that question. I would note that in this particular case, there was at least one other person who was sharing that hotel room with Mr. Franklin, and the facts might suggest that there were more than two, that being Mr. Franklin and Mr. Johnson, because Ms. Ross, who was the informant that Mr. Hernandez relied on, had the type of information that would lead any reasonable judge to conclude that Ms. Ross may also have been staying with Mr. Franklin. She was aware of the fact that there was a gun that was possibly there. She was able to convey the information to Mr. Hernandez that Mr. Franklin may be living at that hotel. But our only concern is whether that motel was his residence. Correct. Agreed. And I would note, you know, when you look at some of the other cases that this Court set out in the Howard case, there's a lot of information that in those instances where the search was upheld, there was a lot of very good information that suggested that the parolee actually was living at the location that was searched. In this case, we have the registrant being the parolee. I mean, I think, frankly, it would be a much more difficult case if one of the other people had checked in and had nominal legal possession of that hotel room. No question. But in this case where you have the parolee being the one who checks in, your client, how is it that we shouldn't say, look, it's his residence. He reports no other residence. He's in the community. That's the only thing he has by way of residence. And look at the terms where he consents to search and seizure of his personal residence. It must refer to the place that he, albeit not for a long term perhaps, but he's residing in at that moment. Why shouldn't we just say, look, if he's the person that checked in, he's there. They have reason to believe he's there. He opens the door, he's there. Why isn't that enough? Well, that goes to the very heart of how I started, and that is that there's no question that the information that Mr. Hernandez had established probable cause to believe that Mr. Franklin would be at the hotel. But when you look at the other information in the record, and this will answer Your Honor's question, the only conclusion that can be reached is that Mr. Franklin was present in that hotel room from at the earliest 830 in the morning, the day of the search, and then up until he was contacted by Mr. Hernandez, and that was approximately an hour and a half later. There's no indication. I agree that being there is not enough. That's the point of Howard and the line of cases discussed there. But here you have the two additional facts, that he has no other residence. Indeed, that's the part of his problem. That's why he's subject to the search, because he hasn't reported another residence. And he's the one who checked in. He's identified by the motel clerk as being the person who checked into that room. So as far as the motel is concerned, he's the one that's legally entitled to that space. Yes. Now, I haven't found any hotel room cases that match these facts, but why is it that we should assume that a hotel room can't be a residence? I can answer that question. I think it is answered with just considering common sense. I'm staying in a hotel room. I would not under any circumstances. You have another residence. Yes, I do, and I'll address that in just a moment. But I begin with that premise. I am staying in a hotel room. I would not under any circumstances consider that hotel room to be my residence. Again, I don't know that there's. . . Here we have a person who identifies himself as homeless. Yes. Who has no other residence, as you do. Agreed. And he is registered in a hotel or motel. That's correct. Here's what I would suggest. First, the record is replete that Mr. Franklin generally stays on the streets or in automobiles or in other persons' residences. That's where he usually is. The reason for that is that there's just no indication that Mr. Franklin has had any source, during the entire time that he was being supervised by Mr. Hernandez. So to think that Mr. Franklin, who has no money and no way to pay for a space in which to claim to be his residence, that that's what he would choose as his residence is directly contrary to what the record shows. Well, that would just send alarm bells going off all over. How is it somebody with no wherewithal has suddenly checked into a hotel room for a night? It's absent from the record. And that's really what I would suggest is important is the record is absent of so much information. I don't think it helps, but go back. We're looking here at the terms of his parole agreement or whatever the local term is, where he says, I am aware, I am subject to search and seizure of my person's residence, automobile or other personal property if there's reasonable cause, blah, blah, blah, blah. And there's no doubt about the reasonable cause. So can that fairly be read to be so limited to say that the only occupancy location he's known to have at that time, a hotel room that he has checked in for and presumably has already paid for or intends to pay for or maybe he just duped the motel, I don't know. When he doesn't have known wherewithal, how is it we shouldn't treat this acknowledgment by him as covering that location in these circumstances? He has no other residence. It's just suspicious that he's there. Well, I would suggest there's just too many other explanations. There's two other people who are sharing that hotel room who could have paid the fee. It's fairly common when more than one person rents a hotel room, somebody has to sign the slip that assures the hotel that you'll bear responsibility for any damage and so forth. I still don't see why it matters. I don't think I made myself clear before because otherwise I'd have an answer and I'd understand it. Let me explain what I mean. Yes. In Motley v. Parks, which is the case that Howard relies on, we explain why the rule is the way it is. Howard, it's very long. It's just flat out a long decision. But all it does, as far as the law is concerned, is apply our en banc decision in Motley v. Parks. And what they both say is that, your best language from Howard is, it's insufficient to show the parolee may have spent the night there occasionally. Instead, the facts have to be sufficient to support a belief in a man of reasonable caution that Howard lived there. Now, we explained in Motley why that's so. And we said the law enforcement officers must have probable cause to believe that the parolee resides at the house to be searched. And what we explained was nothing in the law justifies the entry into and search of a third person's house to search for the parolee. Because if we ruled otherwise, we would risk diminishing the Fourth Amendment protections owed to the homeowner. That's why I gave you the hypo about mom. You can't just go into mom's house and say, we're looking for the parolee because he's not at his last listed address and we're going to search your whole house. And they have no reason to think that he's residing there, though they know that from time to time, like the first night when he got out of jail, he slept at his mom's. The concern there is to protect mom. Here, I can't see where there's reason to think that the parolee does not reside at this hotel room. Whether he resides there all the time, whether he's resided there for a long time, how deep his roots are, just don't matter. It's really the only limitation I'm looking for is to protect third parties who may have their privacy invaded just because they once had let the guy sleep on their couch. But that isn't this case. He has no place else to live. He registered for this hotel room at the Motel 6. Every reason to think that that's where he resides, no reason to think he resides anywhere else. Under Motley and Parks, when you look at the reason for the rule, I don't even understand why we have a problem. Well, I guess I would offer two things. First, I would respectfully disagree with Your Honor. I do believe there's an indication that there is more than one resident occupant of that room. But I don't see why that matters. As long as there's reason to think that that's where he lives, it doesn't really matter if there are other people who live there, too. I understand the cases to require that the level of certainty about whether he may or may not live there would require probable cause certainty. You're probably right about that. And that's why I reference... Probable cause is just a reasonable probability in the totality of circumstances, less than preponderance of evidence. Agreed. And then I would argue again, given the circumstances, that you have at least two, possibly three people that are utilizing that hotel room during a very short period of time, it's just as likely, even though Mr. Franklin signed the hotel slip, it's just as likely that either Ms. Ross or Mr. Johnson were the persons who paid for the room. And then when you look at the short period of time... I don't see why it matters who paid. What matters is who physically resides. Resides is the key. You don't want to search these other people's room just because they once let this fellow sleep on a couch one night. Well, I think also we don't want to randomly search any location where you may find a parolee. And so there's an additional reason, as I understand it, for this Court's decisions. I guess the last thing I would like to say is the record, for the most part, demonstrates that this is not the sort of place where Mr. Franklin would choose to reside. And so when you're considering whether this is a residence, and I guess I would submit that a residence would be somebody's primary place of abode, and it's clear from the record that his historical primary place of abode is the streets and automobiles. Thank you, counsel. Thank you. Counsel? Thank you, Your Honor. May it please the Court, my name is Tyler Tornabene. I represent the appellee of the United States of America. I am happy to answer any questions that Your Honor may have regarding the issue of the state plea agreement. However, if not, I will also combine my comments to the search issue. With regards to that issue, it's key to look at, as Your Honors know, the totality of the circumstances of what CCO Hernandez knew on January 18, 2006. And I think that there's a very key piece of evidence that was not, well, in the record, was not ferreted out quite a bit in the briefs, and that is this. It was January. January in Spokane. And frankly, I only mention it because it's something that's so obvious but it may be overlooked. We're talking about someone who is homeless, chronically, as Mr. Bugbee stated, and the fact that he may or may not have a record of living in less comfortable places does not negate the fact that this is a very good place to stay. And in the totality of the circumstances, when we look at the tip that was received from Ms. Ross, when we look at the confirmation of that tip from the motel. When you say January in Spokane, I think I'm still trying to think what the significance is. It's close to Fairbanks, so he thinks it's Balmain. Oh, you call that cold. Okay, I get it. And I understand where Your Honor is coming from as a native of Montana. There are different perspectives. However, as a homeless person. Okay, you're saying homeless guy wants to get in from the cold, registered for a hotel room. Looks a little pricey for him. On the other hand, he registered for him. Correct. And I'm not saying this is not where the probable cause, pardon the pun, where the hat is hung on this. But it is part of the totality of the circumstances when we look at the appellant's argument of, well, there's other likely explanations. First of all, obviously the fact that there's other likely explanations does not negate probable cause that this was his residence. The fact, however, that it is January and cold out helps undergird the totality of the circumstances, that this is in fact a good residence for a homeless person to get out of that January cold. With regards to some of the other arguments that appellant has brought up in his brief and has been touched on a little bit by the questions of your honors, there is a fundamental distinction between a probationer or parolee who has a reported residence versus one who does not. And that is why Howard and Watts is very distinguishable. Those are cases, especially Howard, where we have a very long investigation attempting to determine whether a reported residence or suspected residence is the actual residence of the parolee. You agree that it's not enough to establish that he's there. You have to have something further to establish that it qualifies as his residence. Certainly. And in fact, in the record, C.C.O. Hernandez testified and gave us what the definition of residency as told to the appellant was. And there's a fairly good back and forth in his testimony, wherein he states that he told the appellant that he needed to report residence every day, realizing this is potentially dynamic because he's homeless. And residence is where he is seeking shelter, where he's hanging his hat, where he is sleeping for the night. And I believe it was actually brought up on cross-examination of C.C.O. Hernandez that that would include if the appellant found a car and a warm mat to sleep under for the night. That would be his residence, and he would be required under C.C.O. Hernandez's instructions and therefore the terms of his community custody, he would be required to report that. What we're looking at here is on January 18th of 2006, C.C.O. Hernandez has spent over a year pursuing essentially the appellants and attempting to nail down his residency. He began supervising him in December of 2004, and indeed he testified that he rarely received any kind of report of where the appellant was residing. You didn't know for a year where this guy was? He did intermittently, but he testified that he rarely received reports as instructed. That's quite the same thing. If you know that somebody always sleeps in his car at a particular location, the fact that he doesn't come in and report to you may be a violation of his conditions, but it doesn't mean you don't know where he is. Correct, and I may have misspoke. What I meant to say was that he spent this time trying to determine and essentially continually update where he was residing, although he may have known he was in the area, and indeed he was sanctioned officially. The appellant was two times during that time and served time for similar violations not reporting his residence. This is a case where for much of the time for a year, the parole officer didn't know where Franklin was, and then he gets a tip and he discovers Franklin has actually registered at the Motel 6. Correct. He didn't know where he was residing, and then gets this tip obviously the day before he was supposed to have met with the appellant. That did not occur, which was yet another and very obvious violation. He gets the tip, which is a very specific tip. It gives the actual room number, and he then, of course, corroborates that by contacting or having the desk clerk contact it, as well as when he then proceeds to the room, identifies the voice of the appellant. The appellant is the person who, despite the fact that Mr. Johnson is there as well, effectively takes ownership of this. The door is knocked on, and he is the one who responds, who is it? He is the one who then opens the door, and that is more indicia of his residency, rather than just being present there visiting Mr. Johnson. But clearly the fact that he is the person who signed for it is probably the most salient fact. I think the record is fairly clear here regarding that there was probable cause to believe that this is a case of residency, not occupancy, and this Court should affirm the lower court accordingly. If there are no more questions, I would end. Thank you, Counsel. U.S. v. Franklin is submitted.
judges: Alarcon, Kleinfeld, Clifton